```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
                     NORTHERN DIVISION
                       AT COVINGTON
```

**CIVIL ACTION NO. 2012-141 (WOB-CJS)**

**MARIAN CURRY**                                                        **PLAINTIFF**

VS.                    MEMORANDUM OPINION AND ORDER

**KENNETH BROWN, ET AL.**                                               **DEFENDANTS**

This matter came before the Court on Defendants' motion for summary judgment (Doc. 18) on Friday, August 16, 2013. Thereafter, the Court granted Plaintiff's oral request to file a supplemental brief on an issue discussed at oral argument and allowed Defendants to file a response. *See* Doc. 28.

Having received the supplemental briefing, made a thorough review of the record, and given careful consideration to the memoranda and oral arguments of the parties, the Court now issues the following Memorandum Opinion and Order.

### *FACTUAL AND PROCEDURAL HISTORY*

Plaintiff, Marian Curry ("Plaintiff"), began working at the Boone County Clerk's Office in 1999. *See* Marian Curry Deposition at 13. Plaintiff was promoted to a supervisory position in the motor vehicle department in 2004. *Id*. at 90-91. In 2010, Plaintiff was diagnosed with breast cancer. *Id*. at 40, 42. Plaintiff was often required to take leave from work due to her illness. *Id*. at 45-46. Plaintiff was approved for leave

under the Family Medical Leave Act (FMLA), but she did not need to use any unpaid FMLA leave because a number of her co-workers donated their sick days to her. *Id.* at 80-81.

Defendant Kenneth Brown ("Defendant Brown") was elected as the Boone County Clerk[1] in November 2010. *See* Doc. 1 at ¶ 13. Shortly after taking office in January 2011, Defendant Brown conducted one-on-one interviews with the Clerk's Office staff so he could meet the staff and assess the office's operations. *See* Curry Depo. at 99-100; *see also* Doc. 18-1.

During the interviews at the Florence branch, a number of employees complained to Defendant Brown about Plaintiff. *See* Doc. 18-1. More specifically, the employees complained that there was tension between Plaintiff and Angela Perkins, another supervisor in the motor vehicle department; that Plaintiff would often call the employees names such as "idiot," "moron," and "dumbass;" and that she struck a few of the employees on the head on various occasions. *See* Doc. 22-2.

On February 1, 2011, Defendant Brown met with Plaintiff to discuss these allegations. *See* Doc. 18-1. Plaintiff acknowledged the tension between herself and Perkins, but she denied the more specific allegations of verbal and physical abuse levied by other co-workers. *Id; see also* Curry Depo. at 102-03.

---

[1] Among other duties, a County Clerk is charged with registering voters for elections taking place in that county. *See* K.R.S. § 116.045.

As a result, Defendant Brown advised Plaintiff that he was placing her on paid leave for three (3) days until he decided how to remedy the problems. *Id*. Defendant Brown testified that at the conclusion of the meeting Plaintiff stated, "I was told that you were a good guy and honest and I voted for you." *Id*. Plaintiff did not recall stating that she voted for Defendant Brown, but she did admit that she told him that she had "supported him." *See* Curry Depo. at 129.

On February 3, 2011, Defendant Brown spoke again with two of Plaintiff's co-workers to confirm their allegations against Plaintiff. *See* Doc. 18-1. Both co-workers confirmed their allegations. *Id*.

Plaintiff and Defendant Brown reconvened on February 4, 2011. *Id*. at 121. After Plaintiff explained that she felt these allegations were fabricated, Defendant Brown advised Plaintiff that she was being demoted from her supervisory role and moved to the Burlington office. *Id*. at 122-23.

Defendant Brown also advised Plaintiff that he would have to cut her pay so that it was commensurate with the other deputy clerks at her position. *See* Doc. 18-1. At this meeting, Defendant Brown told Plaintiff that "she should probably focus on her health rather than worry about the stress of supervising people." *See* Brown Depo. at 4.

3

After this meeting, Defendant Brown looked into Plaintiff's voting records because he knew she was a resident of Grant County and her statements at the February 1, 2011 meeting gave him a cause for concern. *Id*. Defendant Brown confirmed that Plaintiff had voted in Boone County despite becoming a resident of Grant County in 2006. *See* Doc. 18-2.

On February 8, 2011, Defendant Brown met with Plaintiff again and Plaintiff admitted that she had voted in Boone County while she was a resident of Grant County.[2] *See* Curry Depo. at 132. Defendant Brown advised Plaintiff that she had likely broken the law, and he advised her that he was suspending her effective immediately pending possible termination. *Id*. at 132-33. Two days later, Defendant Brown advised Plaintiff, via letter, that she was terminated for her admitted actions. *See* Doc. 18-3.

Plaintiff was subsequently indicted under K.R.S. § 119.025 for one count of wrongful registration, a Class D felony, and she pled guilty to that charge on March 30, 2011.[3] *See* Docs. 18-4, 18-5, 18-6.

---

[2] When Plaintiff first began working for the Boone County Clerk, she resided at 5067 PowDer Keg Road, Burlington, Kentucky which is located in Boone County. *See* Curry Depo. at 8. In June 2006, Plaintiff bought a home and moved to 206 Crittenden Court, Crittenden, Kentucky, which is located in Grant County. *Id*. at 9-10.

[3] K.R.S. § 116.035 provides the rules for determining a voter's residence with respect to where the person is entitled to vote and states, in part:

4

On August 7, 2011, Plaintiff filed a charge with the EEOC alleging violations of Title VII and the ADA. *See* Doc. 1-1. The EEOC dismissed the charge, and this suit was filed on June 25, 2012 against Defendant Brown and Boone County, Kentucky (collectively "Defendants"). *See* Doc. 1, 1-3.

Here, Plaintiff alleges that Boone County, Kentucky and the Boone County Clerk of Courts – Kenneth Brown – in his individual and official capacities, ("Defendants") demoted and terminated her in violation of the Family Medical Leave Act ("FMLA") and discriminated against her because of her disability.[4] *See* Doc. 1 at ¶¶ 49-57.

***ANALYSIS***

**A. Direct Evidence**

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences. If a plaintiff succeeds in presenting direct evidence of a discriminatory motive, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the

---

(1) A voter's residence shall be deemed to be at the place where his or her habitation is, and to which, when absent, he or she has the intention of returning;
(2) A voter shall not lose his or her residence by absence for temporary purposes merely; nor shall he or she obtain residence by being in a county or precinct for such temporary purposes, without the intention of making that county or precinct his home.

[4] Originally, Plaintiff's suit also included claims for age discrimination, sex discrimination, and conspiracy under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and KRS Chapter 344. *See* Doc. 1. However, the parties filed a joint stipulation of dismissal as to those claims on March 29, 2013. *See* Doc. 13.

impermissible motive." *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (citation and internal quotation omitted).

Here, while advising Plaintiff that she was being demoted due to the complaints registered by her co-workers, Defendant Brown stated to Plaintiff that "she should probably focus on her health rather than worry about the stress of supervising people." *See* Brown Depo. at 4.

Citing to *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696 (6th Cir. 2008) and *Hunter v. Valley View Local Sch.*, 579 F.3d 688 (6th Cir. 2009), Plaintiff argues that the above statement is direct evidence of a discriminatory motive. *See* Doc. 19 at 12-13.

In *Daugherty*, while the plaintiff was requesting FMLA leave, the defendant's human resources director warned the plaintiff, "[I]f I took that FMLA for that period of time, there would not be a job waiting for me, when I returned." 544 F.3d at 699.

In *Hunter*, the direct evidence that the use of FMLA leave was a motivating factor came from testimony that the employer, "placed Hunter on involuntary leave both because of Hunter's 'permanent [medical] restrictions' and also because of her 'excessive absenteeism'; that the charge of 'excessive absenteeism' was based on a review of Hunter's attendance record, which included her FMLA leaves; and that 'most of' the

6

absences on Hunter's record were due to FMLA leaves." 579 F.3d at 692.

Despite Plaintiff's assertions, Defendant Brown's statement to Plaintiff is not akin to the direct evidence seen in *Daugherty* and *Hunter*. The fact that Defendant Brown mentioned Plaintiff's ability to focus on her health as a potential positive side effect of no longer having a supervisory role does not require the conclusion that Plaintiff's FMLA leave or her disability were reasons for her demotion.

"[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty*, 544 F.3d at 708. As pointed out by Defendants, this general statement is just as likely to be construed as conciliatory as discriminatory.

Since further inferences would be required to support a finding of discriminatory animus, this statement cannot be considered direct evidence.

**B. FMLA Claims**

**1. Interference**

Plaintiff asserts that Defendants are liable for FMLA interference and retaliation. *See* Doc. 19 at 13-14. To establish an FMLA interference claim, Plaintiff must prove (1) she was an eligible employee; (2) a Defendant was an employer

7

under the FMLA; (3) Plaintiff was entitled to FMLA leave; (4) Plaintiff gave sufficient notice of the leave; and (5) Defendants denied Plaintiff FMLA benefits. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

"[T]o state and prevail on a claim for FMLA 'interference,' the employee must have been entitled to leave, notified the employer of his or her intention to use the FMLA leave, and be denied the leave." *Laws v. HealthSouth N. Kentucky Rehab. Hosp. Ltd. P'ship*, 828 F. Supp. 2d 889, 920 (E.D. Ky. 2011), *aff'd*, 508 F. App'x 404 (6th Cir. 2012).

Similar to the plaintiff in *Laws*, Plaintiff makes no allegation that she was denied FMLA leave after notifying Defendants of her entitlement to such leave. *Id.* In fact, Plaintiff admits that she was granted FMLA leave after applying for it in 2010. *See* Curry Depo. at 81.

Thus, Plaintiff cannot establish a claim for FMLA interference. Rather, Plaintiff's argument that her termination preempted her from further using FMLA merges her interference claim with her retaliation claim. *See Laws*, 828 F. Supp. 2d at 920 ("Plaintiff's 'termination-as-preemption' against future use of FMLA leave [] merges her retaliation arguments with her 'interference' theory.")

8

### 2. Retaliation

To maintain an FMLA retaliation claim, Plaintiff must prove: (1) she was engaged in an activity protected by the FMLA; (2) Defendants knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, Defendants took an employment action adverse to Plaintiff; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *See Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 555 (6th Cir. 2006).

A FMLA retaliation claim based on circumstantial evidence, such as the one asserted by Plaintiff, is evaluated under the *McDonnell Douglas* burden-shifting framework. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (citation omitted).

Rather than discuss Plaintiff's prima facie case, Defendants assert that Plaintiff cannot establish that their legitimate, non-discriminatory reasons for Plaintiff's demotion and termination were pretextual. *See* Doc. 18 at 8-9. Defendants assert that Plaintiff was demoted because of the numerous complaints received about Plaintiff and Plaintiff was terminated because she admitted to violating Kentucky Election laws by voting in Boone County while she was a resident of Grant County. *Id.* at 9-10.

Plaintiff may establish pretext by showing that Defendants' reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *See Seeger*, 681 F.3d at 285 (citation omitted).

### i. Demotion

Regarding the complaints received from numerous co-workers, Plaintiff argues that this legitimate, non-discriminatory reason for her demotion was pretextual because Defendant Brown conducted an insufficient investigation into the complaints. *See* Doc. 19 at 15-16. On this point, Plaintiff asserts that had Defendant Brown asked his predecessor, Renà Ping, he would not have seen evidence of prior complaints. *Id*. at 16.

However, the Sixth Circuit does "not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 477 (6th Cir. 2012) (citation omitted). An employer's belief is not pretextual if it had an honest belief in the proffered non-discriminatory reason. *Id*. (citation omitted). An employer's belief is honest when it reasonably relies on "the particularized facts that were before it at the time the decision was made." *Id*. (citation omitted).

Here, Defendants submitted five (5) affidavits of Plaintiff's former co-workers which all state that in early 2011 they informed Defendant Brown that Plaintiff's attitude and

10

actions created an intolerable work environment. *See* Doc. 22-2. Plaintiff does not dispute that these complaints were made. As the newly-elected County Clerk, Defendant Brown's reliance on a substantial number of complaints made by Plaintiff's co-workers was reasonable when he made the decision to demote Plaintiff.

Therefore, Plaintiff has offered no basis upon which a reasonable jury could find Defendants' legitimate, non-discriminatory reason for her demotion to be pretextual.

### ii. Termination

Next, Plaintiff asserts that Defendants' legitimate, non-discriminatory reason for her termination was pretextual because Defendant Brown and former co-worker Linda Buchannan[5] voted outside of the districts they resided in without reprimand.[6] *See* Doc. 19 at 16.

"In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, the plaintiff and her proposed comparator must have engaged in acts of comparable seriousness." *Martinez v. Cracker Barrel Old Country Store,*

---

[5] In both parties' pleadings, Linda Buchannan is also referred to as Linda Smith.

[6] After oral argument, Plaintiff's counsel requested leave to file a supplemental brief on an issue discussed at the hearing, which the Court granted. *See* Doc. 28. At oral argument, the Court focused the majority of the discussion on the allegedly comparable employees that Plaintiff asserted in her prior filings were not terminated for engaging in similar conduct. In her supplemental brief, Plaintiff again asserted that the similarly-situated analysis is not needed because there is direct evidence. *See* Doc. 27 at pp. 1-2. However, as the Court previously found, there is no direct evidence of discrimination here.

11

*Inc.*, 703 F.3d 911, 917 (6th Cir. 2013) (citation and internal quotation omitted).  "To make this assessment, a court must look to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Id.* (citation and internal quotations omitted).

Despite Plaintiff's exhaustive research into Defendant Brown's and Ms. Buchannan's backgrounds, these individuals are not similarly situated to Plaintiff.

Regarding Defendant Brown, Plaintiff offers a number of pieces of evidence which she believes establish that Defendant Brown changed his residence in late 2007 and voted in the incorrect district during the 2008 election.  *See* Doc. 19 at pp. 5-9.  However, Defendant Brown asserts that while he had purchased a piece of property in a different voting district in late 2007, he did not make that property his residence until December 2008.  *See* Doc. 3-4.

At the request of Plaintiff's counsel, the Kentucky Attorney General investigated the allegations that Defendant Brown voted in the incorrect district and found there to be insufficient evidence to sustain those allegations.  *See* Doc. 22-1.

Plaintiff also alleges that former co-worker Linda Buchannan has voted in the incorrect district without reprimand. *See* Doc. 19 at pp. 9-10. More specifically, Plaintiff asserts that Ms. Buchannan voted in the 2010 election at the Hebron #1, A108 despite the fact that she had moved from her Hebron, Kentucky residence to a Burlington, Kentucky residence. *Id*.

The only evidence Plaintiff offers at this stage of the litigation to support this allegation are Duke Energy bills which show that the utilities at the Hebron, Kentucky residence were switched from Ms. Buchanan's name to that of another individual and an affidavit of a former co-worker stating that Ms. Buchannan had moved to Burlington, Kentucky in September of 2010. *Id*.

At Plaintiff's unemployment hearing after she was terminated, Defendant Brown learned that Plaintiff was alleging that Ms. Buchannan had voted in a Hebron district although she had moved to Burlington. *See* Video Deposition of Kenneth Brown at Video 2, 20:30-22:00. Similar to the procedure he used with Plaintiff, Defendant Brown asked Ms. Buchannan where she resided and where she voted. *Id*. In response, Ms. Buchannan told Defendant Brown that, while she stayed at her boyfriend's home occasionally in Burlington, her residence was in Hebron and she voted in Hebron. *Id*.

13

Despite Plaintiff's assertions to the contrary, Plaintiff's admitted violation of the law versus the unconfirmed allegations against Defendant Brown and Ms. Buchannan create "such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[7]  *Martinez*, 703 F.3d at 917; *see also Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 484 (6th Cir. 2008) (finding that the difference in severity between the plaintiff's conduct and that of his alleged comparators was such that no reasonable jury could find that their conduct was the same for purposes of the similarly situated analysis).

Further, the fact that Plaintiff was ultimately indicted on and convicted of wrongful registration also bolsters this Court's finding that Plaintiff was not similarly situated to her alleged comparators.  This fact becomes even more persuasive when compared to the fact that the same allegations against Defendant Brown were investigated by the Kentucky Attorney General and found to be unsupported by sufficient evidence.

---

[7] The fact that Defendant Brown was Plaintiff's supervisor also weighs against a finding that these two individuals are similarly situated in all relevant aspects.  *See Henry v. Delta Air Lines, Inc.*, No. 2:10-CV-00009-WOB, 2011 WL 3444089, at *9 (E.D. Ky. Aug. 8, 2011) (finding that plaintiff and her alleged comparator were not similarly situated, in part, because the alleged comparator was plaintiff's supervisor); *see also Palmer v. Potter*, 97 F. App'x 522, 525 (6th Cir. 2004) (finding that the plaintiff could not satisfy the similarly-situated element, in part, because an employer is justified in disciplining individuals at elevated positions differently than their junior colleagues).

14

Moreover, setting aside the comparison of Plaintiff to Defendant Brown and Ms. Buchannan, Plaintiff still carries the burden of showing that Defendants' motive for her termination was discriminatory. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a 'pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original).

Plaintiff's only evidence of a discriminatory or retaliatory motive is Defendant Brown's statement after demoting Plaintiff that "she should probably focus on her health rather than worry about the stress of supervising people." *See* Doc. 19 at p. 12. Without more, this statement is insufficient to establish a discriminatory intent, particularly in light of Plaintiff's admission to Defendant Brown that she voted in one district while residing in another. It would strain credulity to accept that the Boone County Clerk – the elected official charged with voter registration in Boone County – would not terminate an employee who admits to illegal voting.

Thus, Plaintiff has not met her burden of producing sufficient evidence from which a reasonable jury could reject Defendants' legitimate, non-discriminatory reason and infer that Defendants intentionally discriminated against her. *See Seeger*,

15

681 F.3d at 285. Therefore, Defendants are entitled to summary judgment Plaintiff's FMLA interference and retaliation claims.

**C. Disability Discrimination Claim**

Plaintiff also asserts a claim for disability discrimination under the Kentucky Civil Rights Act ("KCRA") and the Americans with Disabilities Act ("ADA"). *See* Doc. 19 at 16-20. "The KCRA's disability discrimination provisions track the federal law and should be interpreted consonant with federal interpretation." *Summers v. Middleton & Reutlinger, P.S.C.*, 214 F. Supp. 2d 751, 755 (W.D. Ky. 2002) (citation and internal quotation omitted).

"[W]ithout direct proof of discrimination, the plaintiff may establish a *prima facie* case of discrimination by showing that: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Roetter v. Michigan Dep't of Corr.*, 456 F. App'x 566, 569-70 (6th Cir. 2012) (citation omitted) (emphasis in original).

However, Plaintiff's disability discrimination claim suffers from the same problem analyzed above: she cannot establish that Defendants' legitimate, non-discriminatory

16

reasons for her demotion and termination were pretexual.[8]  *See Breen v. Infiltrator Sys.*, 417 F. App'x 483, 485 (6th Cir. 2011) ("In the absence of direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas* governs a claim of disability discrimination.") (citation omitted).

Accordingly, Defendants are also entitled to summary judgment on Plaintiff's disability discrimination claim.

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED THAT**:

1.  Defendants' motion for summary judgment (Doc. 18) be, and is, hereby **GRANTED**; and

2.  A separate judgment shall enter concurrently herewith.

This 9th day of September, 2013.

---

[8] In her supplemental memorandum, Plaintiff also asserts that her disability discrimination claim does not require a similarly-situated person analysis. *See* Doc. 27 at p. 4.  On this point, Plaintiff cites to *Roetter v. Michigan Dep't of Corr.*, 456 F. App'x 566, 569-70 (6th Cir. 2012) and argues that this case "clearly indicates at Headnote 10 that indirect disability claims should use the 5-part test set out in *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)." *See* Doc. 27 at p. 4.  However, after laying out the 5-part test, the *Roetter* Court states the following:  "The defendant must then offer a legitimate explanation for its action.  If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times." *Roetter*, 456 F. App'x at 570 (citing *Monette*, 90 F.3d at 1186-87).  As stated previously, Defendants offer a legitimate, non-discriminatory reason for Plaintiff's termination.  Plaintiff's only assertion of pretext is her argument that Defendant Brown and Ms. Buchannan are similarly situated to her, but they were not terminated.  Since Plaintiff cannot establish that these individuals were similarly situated to her, she cannot establish pretext.  Thus, Plaintiff's disability discrimination claim fails.



Signed By:
*William O. Bertelsman* WOB
United States District Judge